**IN THE COURT OF APPEALS OF IOWA**

No. 22-1177
Filed November 2, 2022

**IN THE INTEREST OF A.P. and S.P.,**
**Minor Children,**

**K.P., Mother,**
        **Appellant,**

**B.P., Father,**
        **Appellant.**
_____

        Appeal from the Iowa District Court for Polk County, Brent Pattison, District

Associate Judge.


        A mother and father separately appeal the termination of their parental

rights to two children.  **AFFIRMED ON BOTH APPEALS.**


        Thomas G. Crabb, Des Moines, for appellant mother.

        Alexis R. Dahlhauser of Neighborhood Law Group of Iowa,

West Des Moines, for appellant father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Bo Woolman of Youth Law Center, Des Moines, attorney and

guardian ad litem for minor children.


        Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A mother and father separately appeal the termination of their parental rights to two children, A.P. and S.P. Both parents maintain reasonable efforts were not provided, termination is not in the best interests of the children, and an extension should have been granted. The father also contends the statutory grounds are unsatisfied, an exception should be granted due to relative placement, and a guardianship should have been considered. Upon our de novo review, we affirm termination of their parental rights to both children.

## I.    *Background Facts and Proceedings.*

In March 2021, A.P. (born 2015) and S.P. (born 2019) moved to Ankeny for placement with their maternal aunt in connection with a child-in-need-of-assistance case in Kansas. The Iowa Department of Health and Human Services (DHHS) provided supervision pursuant to the Interstate Compact on the Placement of Children, and the case was officially transferred to Iowa in June. In May, the parents had moved to Iowa as well, albeit three hours away from Ankeny in a rural town near other members of the mother's family.

The parents' case was not off to a promising start in Kansas. The children were removed from their parents' custody in January 2020 due to methamphetamine use and failure to participate in substance-abuse evaluations. By the time of their move to Iowa in 2021, both parents had been unsuccessfully discharged from treatment, and they were not participating in services or compliant with drug screening. When tested, both parents returned results positive for amphetamines and methamphetamine on multiple occasions. Neither were

participating in the recommended mental-health services, and both stated there was no need for parenting classes.

The children's first hearing in Iowa was held in October. All parties stipulated that A.P. and S.P. were children in need of assistance. Given the case history, the court noted the next hearing would address both disposition and permanency. However, delays from both the DHHS and the parents pushed the hearing back to May 2022, when the court also addressed the petition for termination of parental rights.

In the interim, the court approved funding to pay for substance-abuse evaluations while the parents were seeking Medicaid eligibility. That funding was never used. Drug testing confirmed both parents were still actively abusing methamphetamine less than one month before the termination hearing. The mother reported she was in outpatient treatment just prior to the hearing but did not sign a release for the DHHS to be able to confirm her participation. The father reported having set up an evaluation for shortly after the hearing. Although both parents blamed the DHHS for their shortcomings, the juvenile court could not "find either parent's testimony to be credible about their participation in services and [the DHHS] failures."

After the court terminated their rights, both parents filed timely appeals.

## II.    Review.

Our review of termination proceedings is de novo. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or

substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted). We give weight to the juvenile court's fact findings, especially those about witness credibility, although they are not binding. *See* Iowa R. App. P. 6.904(3)(g); *C.B.*, 611 N.W.2d at 492.

### III. Discussion.

The principal concern in termination proceedings is the children's best interests. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). Iowa courts use a three-step analysis to review the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). Those steps include whether: (1) grounds for termination have been established, (2) termination is in the children's best interests, and (3) we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. We address each step, and the parents' additional arguments, in turn.

#### A. Grounds for Termination.

Here, the juvenile court found the State proved by clear and convincing evidence that termination of the mother and father's parental rights was appropriate under two grounds as to each child. We may affirm if the record supports termination on any one ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Neither parent contests the application of section 232.116(1)(e) (2022). Therefore, the parents waived any claim of error related to this statutory ground for termination.[1] *See In re K.K.*, No. 16–0151, 2016 WL 1129330, at *1

---

[1] Though unnecessary to our disposition, we note the father's challenge to the other grounds for termination—that the children could be returned to his custody

(Iowa Ct. App. Mar. 23, 2016) (holding failure to challenge one of the grounds for termination results in waiver of any claim of error on that ground). Accordingly, we affirm the juvenile court's conclusion that termination is appropriate under section 232.116(1)(e).

*B. Best Interests.*

Clear and convincing evidence shows that termination is in the children's best interests. The children have not been in the parents' custody since they were removed more than two years ago. Despite the offer of services to help the parents address their methamphetamine use, the parents were in no better position to provide the children with a safe and permanent home at the termination hearing than they had been at the time of removal. *See In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (noting that the legislature "has significantly, and not too subtly, identified a child's safety and . . . need for a permanent home as the defining elements in a child's best interests" (citation omitted)). We will not deprive the children of permanency based on the hope that someday the parents will be able to provide a safe and permanent home. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014).

Moreover, the children are integrated into a stable and supportive placement with their foster parents, who have expressed interest in adopting them. *See* Iowa Code § 232.116(2)(b) (2022); *In re M.W.*, 876 N.W.2d 212, 225 (Iowa

---

because there is no nexus between his drug use and adjudicatory harm—is unfounded. *See, e.g., In re J.S.*, 846 N.W.2d 36, 37 (Iowa 2014) ("[A] parent's methamphetamine addiction by itself can result in 'harmful effects' to the child, thereby justifying state intervention to protect the child.").

2016) (noting a child's favorable integration into a foster placement supports finding termination is in the child's best interests). Accordingly, we find termination of both parents' rights is in the best interests of the children.

    *C. Exceptions to Termination.*

    The father also argues against termination of his parental rights because the children are in the custody of their maternal aunt and a guardianship should have been considered. *See* Iowa Code § 232.116(3)(a) (stating the court "need not terminate the relationship between the parent and child if the court finds . . . [a] relative has legal custody of the child"). The provisions of section 232.116(3) are "permissive, not mandatory." *A.S.*, 906 N.W.2d at 475. The decision to use section 232.116(3) to save the parent-child relationship is discretionary and depends on the facts of each case. *Id.*

    Here, there is no question that the maternal aunt can keep the children safe and provide them with stability. However, our courts do not prefer guardianship over adoption. *Id.* at 477. As our supreme court has noted, a guardianship requires annual reports to the court until the children reach the age of majority. *Id.* at 477–78. Until that time, the court may end the guardianship or appoint a different guardian. *Id.* at 478. For that reason, a guardianship inherently offers less permanency than adoption. *But see In re B.T.*, 894 N.W.2d 29, 34 (Iowa Ct. App. 2017) (holding, under the specific facts of that case, that placing the child in a guardianship with his grandmother was no less permanent than requiring the grandmother to adopt). We decline to preserve the father's parental rights based on the children's familial placement. "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness

of a family relative to take the child." *A.S.*, 906 N.W.2d at 475 (citation omitted). We instead look to the children's best interests. *See id.* Having done so, we conclude the children's best interests are served by termination.

*D. Reasonable Efforts.*

The parents both argue the DHHS did not make reasonable efforts at reunification. *See* Iowa Code § 232.102(7) (requiring that DHHS "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). Although the father filed a motion for reasonable efforts after the filing of the petition for termination, the mother failed to identify a deficiency in agency services prior to the termination hearing. *See T.S.*, 868 N.W.at 425 ("While the State has an obligation to provide reasonable services to preserve the family unit, it is the parent's responsibility 'to demand other, different, or additional services *prior* to the termination hearing.'" (citation omitted)).

Regardless, we agree with the juvenile court's finding that the DHHS made reasonable efforts toward the permanency goal of reunification. Under Iowa law, the State must establish reasonable efforts were made in connection with proving the child cannot safely be returned to the parents' custody. *C.B.*, 611 N.W.2d at 493. In evaluating whether reasonable efforts have been made, our courts consider "the type, duration, and intensity of services or support offered or provided" and the "relative risk to the child of remaining in the child's home versus removal of the child." Iowa Code § 232.102(10)(a)(1), (2). As the juvenile court concluded:

> There is no question [the DHHS] could have done numerous things better in this case. . . . But the bottom line is that the vast majority of the parents' challenges in this case are of their own making. They have not taken meaningful steps to address their methamphetamine use in Kansas or Iowa. . . .
>
> The Court agrees with them that it would have been nice to have a local [DHHS] worker on the case—rather than work with someone from Des Moines. But the problem was not really that there were no services available locally, but that the parents did not take advantage of them.

Given the risks presented by the parents' continued substance abuse combined with the DHHS's array of services offered, we find the agency has satisfied its obligation to make reasonable efforts toward reunification. Accordingly, we will not disturb the juvenile court's finding in this regard.

*E.  Six-Month Extension.*

Both parents request more time to achieve reunification. Under Iowa Code section 232.104(2)(b), the court can continue the children's placement for another six months if doing so will eliminate the need for the children's removal. The court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

We view termination proceedings with a sense of urgency once the time provided in section 232.116(1) passes. *See C.B.*, 611 N.W.2d at 494–95. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.M.*, 843 N.W.2d at 112 (citation omitted). Based on the parents' history and lack

of progress during the years this case has been open, we cannot find the need for removal will no longer exist if either parent is allowed six more months.  *See A.B.*, 815 N.W.2d at 778 (noting a parent's past performance shows the quality of the future care that parent can provide).    We thus decline to apply section 232.104(2)(b) to delay permanency.

## IV.    *Disposition.*

For these reasons, we affirm the termination of both the mother's and father's parental rights.

**AFFIRMED ON BOTH APPEALS.**